### TOOMEY *v.* LYMAN.

*(Supreme Court, General Term, Fifth Department. October, 1891.)*

FRAUDULENT CONVEYANCES—EVIDENCE—PRESUMPTIONS.

> In an action by a married woman for the conversion of crops under execution against her husband, it appeared that the husband had coveyed the land to plaintiff after the execution creditor's debt was incurred "in full of all indebtedness to date." Defendant alleged that the conveyance was in fraud of the husband's creditors. The question involved was as to whether plaintiff paid a *bona fide* consideration. *Held*, that the failure of plaintiff to produce her husband as a witness created a presumption against her which should have been submitted to the jury.

Appeal from Ontario county court.

Action by Catherine Toomey against Arnold Lyman. The cause was first tried in the court of a justice of the peace, and afterwards in the county

court on appeal. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*E. Hicks*, for appellant. *J. Colmey*, for respondent.

DWIGHT, P. J. The main features of this case are familiar. A wife brings trover for property taken on execution against her husband, claiming title thereto by transfer from her husband; and the transfer is assailed on the ground that it was made in fraud of creditors, and especially to defeat the collection of the debt for which the judgment was recovered on which the execution was issued under which the defendant justifies. The principal portion of the property in question was a quantity of corn in the ear, which was grown in the summer of 1888, on a farm of 50 acres, which had been owned and occupied for many years by John Toomey, the husband of the plaintiff, and which was still occupied by him and his family when the corn was grown, but which he had conveyed to his wife, the plaintiff, in January of that year. At the time of the conveyance the husband was indebted to the execution creditor for the balance of a note given for the lumber of which the house on the farm was built. The conveyance was for the nominal consideration of $3,600, and was subject to the lien of three mortgages executed by Toomey and wife, amounting, exclusive of interest, to the sum of $3,200, which, by express covenant of the deed, the plaintiff did not assume or agree to pay, and at the same time the plaintiff gave to her husband a receipt "in full of all indebtedness to date." No indebtedness was specified in the receipt, but the plaintiff testified that it amounted to about $300, of which she had let her husband have $100, 20 years before, and other sums, amounting to $80 or $90, later. There was no evidence given of the value of the farm, nor of the amount of interest accrued on the mortgages, but on their face the incumbrances amounted to $64 an acre. There is no evidence that there was any value in the farm over and above the incumbrances; and the careful provision in the deed that the plaintiff should incur no personal liability by reason of the purchase indicates that in the judgment of the parties it was at least doubtful whether there was any such value; and it is difficult to see what reason there was, personal to the plaintiff, why she should wish to have the title in her, rather than in her husband, as it had always been. There was no ostensible change in the possession, nor any change in the occupation, use, or management of the farm. Indeed, the change seems to have been in name merely, so as far the plaintiff was concerned; and what motive she could have had, on her own account, in parting with any consideration of value for such nominal transfer, is not clear. It is plain from the statement made that no charge of fraud in this transfer can stand upon the ground of inadequacy of consideration, nor upon the ground of intent to defeat the collection of the husband's debts out of the real estate transferred. The question in respect to consideration is whether any *bona fide* consideration was paid or parted with by the plaintiff. If not, then she is chargeable with the fraudulent intent, whatever it was, entertained by her husband, even though she did not share it, or have notice of it; and in respect to the intent of the husband the question would seem to be whether the transaction was a device to shield the crops thereafter to be raised from liability for the debts of the husband. It may well be argued that no other purpose could be served by the deed to the plaintiff; that the real estate was proof against the lien of a judgment, and that, if the crops could be equally protected against execution, the debtor and his family might continue to enjoy their possession of the farm and its products, quite independent of creditors, so long as they could manage to pay the interest on the mortgages. The questions suggested we regard as the real questions in the case. As bearing upon them, the intent of the husband

was primarily material. The question of notice to the plaintiff of his intent was material or not, according as the fact should appear whether or not she did in good faith pay any consideration for the deed. These questions, it is true, were for the most part questions of fact for the jury; but they were questions upon which the defendant was entitled to the benefit of all the presumptions legitimately to be drawn from the evidence or the absence of evidence in the case. It was a case to be determined mainly upon circumstantial or presumptive evidence, and there was one presumption the just benefit of which, we think, was denied the defendant by the refusal of the court to charge as requested. We refer to the presumption to be drawn from the failure of the plaintiff to call her husband as a witness in the case. It is plain that his testimony would have been of the utmost importance. It was his act which was the subject of inquiry. His intent in that act was, as we have said, primarily material. His testimony would also have been important upon the other questions of notice to the plaintiff and of the *bona fides* of the consideration paid or rendered by the plaintiff for the transfer to her; but his testimony upon all these questions was withheld by the plaintiff. We think that, under the peculiar circumstances of this case, it was a strong one for the application of the rule that an inference unfavorable to the plaintiff's case may be drawn from the suppression of testimony of vital importance to the issues. Whart. Ev. § 1266; Steph. Dig. Ev. (Chase's Ed.) p. 220, note; *People* v. *Hovey*, 92 N. Y. 554. We think that upon this question the defendant was entitled to the instruction substantially as requested by his counsel, viz., "that the neglect of the plaintiff in this case to call John Toomey as a witness is an omission which the jury may construe as a presumption against her;" and that the response of the court that "the jury may construe it as a presumption against her, provided there is any presumption occurs to their minds," did not meet the requirements of the case; and especially that the subsequent statement of the court, "I decline to charge that there is any presumption against the plaintiff for not calling the witness Toomey," was error to the prejudice of the defendant.

The question of the estoppel of the plaintiff by giving a receipt for the property to the constable was an important one, and the fact would no doubt have been fatal to the plaintiff's case (*Dezell* v. *Odell*, 3 Hill, 215) but for the testimony of the plaintiff that she was at the time claiming the property in question as her own, and that the defendant assured her that the receipt would in no way affect her rights. That testimony which, though directly contradicted, seems to have been credited by the jury, no doubt saves her case from the effect of an estoppel; but, for the error first considered, we think the judgment must be reversed. Judgment and order appealed from reversed, and a new trial granted in Ontario county court, with costs to abide the event. All concur.